**U.S. Department of Justice**

*Human Rights and Special Prosecutions Section* *Washington, D.C. 20530*

April 3, 2019

Roel Canales, Esq.
416 Shiloh Dr.
Unit C1
Laredo, TX 78045
rcanaleslaw@outlook.com

Re: *United States v. Moktar Hossain*, 5:18-cr-00912

Dear Counsel,

On March 25, 2019, the Court directed the Government to "speak with HSI Agents in Monterrey regarding Defendant's claims he was in Mexico legally and regarding any other information concerning the coordination and efforts that were done in deporting Defendant from Mexico by April 9, 2019 and provide that information to Defense counsel." *See* Minute Entry, Mar. 25, 2019. In accordance with the Court's instructions, the Government has communicated with HSI agents in Monterrey and has obtained the attached Mexican immigration document (Attachment A) and U.S. parole documents (Attachment B) which it now produces to you in discovery.

As the Government has previously disclosed, on November 20, 2018, a federal grand jury sitting in the Southern District of Texas issued a sixteen-count alien smuggling indictment against your client. That same day, United States Magistrate Judge Sam S. Sheldon signed a sealed warrant for the arrest of Hossain. Subsequently, HSI Monterrey coordinated with Fuerza Civil ("FC") (Nuevo Leon Police) and Instituto Nacional De Migracion ("INM") (Mexican Immigration Officials) to locate and apprehend Hossain. On November 29, 2018, FC and INM arrested Hossain in Monterrey, Mexico and processed him for deportation to Bangladesh through Houston, Texas. Members of INM as well as agents of HSI Monterrey, accompanied Hossain on the plane to Houston, Texas. Upon arrival in the Southern District of Texas, Hossain was placed under arrest pursuant to the arrest warrant.

As you will see set out in more detail below, the Government believes that the circumstances of Hossain's deportation from Mexico and arrest in the United States were entirely proper and lawful. In any event, however, the law is clear that the circumstances under which the United States obtained custody of the defendant would not entitle him to any relief in this case. It is well established under the *Ker-Frisbie* doctrine that a criminal defendant cannot defeat personal jurisdiction in the United States by asserting the illegality of the procurement of his presence in the relevant jurisdiction. *See Ker v. Illinois*, 119 U.S. 436, 444 (1886) (holding that the forcible kidnapping of a defendant from Peru did not defeat jurisdiction in the United States and "presents no valid objection to his trial in such court"); *Frisbie v. Collins*, 342 U.S. 519, 522-23 (1952) (relying on *Ker* to dismiss the defendant's contention that his abduction in Illinois to stand trial in Michigan violated due process). Numerous courts have relied on the

*Ker-Frisbie* doctrine to deny defendants' claims that they were improperly brought to the relevant jurisdiction. *See Gon v. Holt*, 774 F.3d 207, 214 (4th Cir. 2014) ("Under the *Ker-Frisbie* doctrine, a defendant's involuntary presence in a court is not a bar to personal jurisdiction."); *United States v. Shibin*, 722 F.3d 233, 243 (4th Cir. 2013 ("Under the *Ker-Frisbie* doctrine, the manner in which the defendant is captured and brought to court is generally irrelevant to the court's personal jurisdiction over him."); *United States v. Castillo*, 568 Fed. Appx. 774, 783 (11th Cir. 2014) ("Castillo's abduction from the Dominican Republic does not serve as a bar to the jurisdiction of the district court."); *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016) ("Federal courts have personal jurisdiction over criminal defendants before them, whether or not they are forcibly brought into court.").

Some courts have recognized that an exception to the *Ker-Frisbie* doctrine may exist where an extradition treaty contains an explicit provision making the treaty the exclusive means by which a defendant's presence may be secured. For example, in *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), the Supreme Court applied the *Ker-Frisbie* doctrine under circumstances where a Mexican defendant was forcibly kidnapped in Mexico by DEA agents and brought to the United States. The Court held that because the U.S.-Mexico treaty did not expressly prohibit the defendant's abduction, "the rule in *Ker* applies, and the court need not inquire as to how [defendant] came before it." *Id.* at 662. Likewise, in *United States v. Chapa-Garza*, 62 F.3d 118, 120-21 (5th Cir. 1995), the Fifth Circuit denied the defendant's motion to dismiss the indictment on the grounds that he had been abducted and deported from Mexico while extradition proceedings were ongoing. The Fifth Circuit ruled that because the U.S.-Mexico extradition treaty "does not support the proposition that abductions are prohibited outside its terms," and because Mexico did not object to the defendant's alleged abduction, the defendant lacked standing to raise a violation of the extradition treaty as a basis for challenging the district court's jurisdiction. *Id.* at 120.[1]

Similarly, in this case the U.S.-Mexico extradition treaty did not prohibit Mexico from deporting Hossain, and as a result there was nothing improper or unlawful about the United States obtaining custody of him as a result of Mexico's deportation. *See* Attachment C (Mexico-United States Extradition Treaty); *see also United States v. Mejia*, 448 F.3d 436, 442-43 (D.C. Cir. 2006) (holding that the district court properly had jurisdiction over a defendant who was arrested by the DEA in Panama and transferred to the United States without following formal extradition requirements, because the extradition treaty between the U.S. and Panama "contains no prohibition against procuring the presence of an individual outside the terms of the treaty—let alone one barring the signatories from informally cooperating with each other as they did in this case"); *Kasi v. Angelone*, 300 F.3d 487, 493-500 (holding that the forcible abduction of the defendant from

[1] Some courts have also recognized that an exception to the *Ker-Frisbie* doctrine may exist if "the United States government engaged in misconduct of the most shocking and outrageous kind to obtain [the defendant's] presence." *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010) (quotation marks omitted). As discussed above, the facts of this case involve no "shocking and outrageous" behavior, but rather lawful and proper coordination between United States and Mexican law enforcement entities. *See United States v. Torres-Garcia*, No. 05-267(RMC), 2007 WL 1207204, at *4 (D.D.C. April 24, 2007) (noting that undercover officers' efforts to lure the defendant to Panama, the Panamanian authorities' decision to deny the defendant's entry into Panama and expel him, and the United States's cooperation with Panama to secure custody of the defendant made the Government's "conduct less shocking than in *Alvarez-Machain*").

Pakistan did not divest state trial court of jurisdiction because such abductions were not prohibited by the relevant extradition treaty).

Finally, it is worth noting that the United States' intergovernmental cooperation with Mexican law enforcement in this case contains none of the arguably coercive conduct present in *Alvarez-Machain* and other cases. Hossain was not abducted or lured from Mexico. Instead, the Mexican immigration documents provided as Attachment A demonstrate that Mexican authorities adjudicated Hossain's immigration status and expelled him from Mexico pursuant to Mexican law. After his deportation, United States law enforcement then paroled Hossain into the country in order to effectuate his arrest. Such conduct does not entitle Hossain to relief before this Court. The question of Hossain's immigration status in Mexico, and the circumstances under which Mexico determined that it was entitled to deport Hossain under Mexican law, are not relevant in the instant case and the defendant is not entitled to litigate in the United States questions regarding Mexican law and whether Mexico properly adjudicated his immigration status in Mexico. *See Sahagian v. United States*, 864 F.2d 509, 514 (7th Cir. 1988) ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." (quotation marks omitted)); *Mejia*, 448 F.3d at 442-43.

Please do not hesitate to let us know if you have any additional questions regarding the discovery the Government has provided in this matter.

Sincerely,

<u>/s/ James Hepburn</u>
James Hepburn
Erin Cox
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 200
Washington, D.C. 20530