**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 5:18-cr-00912** |
| | § | |
| **MOKTAR HOSSAIN;** | § | |
| **AKA MUKTAR HUSSAIN;** | § | |
| **AKA MUSA;** | § | |
| **AKA MUSA BHAI;** | § | |
| **AKA BABU BHAI;** | § | |
| **AKA ASHRAF;** | § | |
| **AKA ASHRAB;** | § | |
| **AKA RICKY;** | § | |
| **AKA CARLOS** | § | |

# GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The United States of America, Plaintiff, by and through the United States Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section, files this response to Defendant Moktar Hossain's Motion to Suppress Statements and Evidence, ECF No. 40. At issue is the custodial interview of the Defendant conducted by HSI Special Agents following the Defendant's arrest. The record demonstrates that the Defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda* before making incriminating statements to law enforcement, and that the Defendant's confession was in all other respects voluntary and not the product of coercion. This Court should accordingly deny the Defendant's motion.

## I. Anticipated Factual Background

On November 20, 2018, a federal grand jury sitting in the Laredo Division of the Southern District of Texas issued a sixteen-count indictment against the Defendant. The indictment alleges

that the Defendant was a member of a conspiracy to bring aliens to the United States between March 2017 and August 2018 in violation of 18 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(i), and 1324(a)(1)(B)(i); that he actually brought, or aided and abetted the bringing of, fourteen individual aliens to the United States during that time period in violation of 18 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; and that he conspired to encourage and induce aliens to enter the United States illegally during the same time period in violation of 18 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). That same day, United States Magistrate Judge Sam S. Sheldon signed a sealed warrant for the arrest of Hossain.

Subsequently, HSI Monterrey coordinated with Fuerza Civil ("FC") (Nuevo Leon Police) and Instituto Nacional De Migracion ("INM") (Mexican Immigration Officials) to locate and apprehend the Defendant. On November 29, 2018, FC and INM arrested the Defendant in Monterrey, Mexico and processed him for deportation to Bangladesh through Houston, Texas. Members of INM as well as agents of HSI Monterrey accompanied the Defendant on the plane to Houston, Texas. The plane landed in the Southern District of Texas at 8:09 p.m. CST. The Defendant was processed for entry into the United States by Customs and Border Patrol, and was taken by HSI agents to their office at the airport.

At 9:01 p.m. CST HSI Special Agents Ryan DiAndrea and Mohammed Rahman (who is a native Bengali speaker) began an audio recorded interview with the Defendant. *See* Attachments B and C.[1] The Defendant requested water and the agents provided it. Attachment B at 2. Agent

---

[1] There is no dispute that the Defendant was subjected to custodial interrogation as defined by *Miranda* and its progeny. *See United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012); *United States v. Chavira*, 614 F.3d 127, 133 n.8 (5th Cir. 2010).

DiAndrea informed the Defendant that a warrant had been issued for the Defendant's arrest for human smuggling and, pursuant to the Defendant's request, Agent Rahman translated that information into Bengali, the Defendant's native tongue. *Id.* at 3-4. Over the course of the next several minutes, Agent Rahman attempted to establish rapport with the Defendant, discussing his background, family, and religion. *Id.* at 2-6. Agent Rahman admonished the Defendant that the United States is a nation with rules and one that gives people like the Defendant an opportunity to speak, and invited him to ask questions if there was something he did not understand. *Id.* at 6. Shortly after beginning the interview, the agents provided the Defendant with a written copy of the *Miranda* warnings translated into Bengali. *See* Attachment A; Attachment B at 7. Agent Rahman then read each of the warnings to the Defendant and stopped after each warning to confirm that the Defendant understood. Attachment B at 8. After receiving verbal confirmation from the Defendant that he understood the warnings, the Defendant signed the waiver form at 9:27 p.m. CST. *Id.*[2]

After the Defendant waived his Miranda rights, Agent Rahman inquired if the Defendant still wished to speak with the agents. *Id.* at 9. The Defendant asked if they were going to produce him in court and each confirmed that they were. *Id.* The Defendant asked for further explanation. *Id.* After Agent Rahman explained that this was the Defendant's opportunity to speak and that the Defendant would go to court the next day, the Defendant conveyed understanding by stating, "I

---

[2] The United States does not intend to introduce any statements made by the Defendant before his valid written waiver of the *Miranda* warnings.

wanted to say . . . . I wanted to say that I am not involved in the activities for which I am accused and arrested. My home is in Mexico City." *Id.* at 9-10.

Over the course of the next two hours, Agents Rahman and DiAndrea questioned the Defendant. During the questioning, they encouraged the Defendant to be truthful because (1) they knew a lot about him; (2) he was facing a long time in prison; and (3) this was his opportunity to speak. *See, e.g., id*. at 9, 11, 16. Eventually, Hossain stated, "I am sorry, I trafficked people . . . . I trafficked people that way, I helped them. What I have done was motivated by money and what I have earned so far exceeds my qualification . . . . I did help people coming to this country; whatever I did I did it for money." *Id.* at 17. The Defendant proceeded to admit he had helped 60-80 Bangladeshis over the last year-and-a-half to enter the country illegally. *Id.* at 18. He stated he was paid approximately $200 for each alien he assisted. *Id.* at 25. At 10:51 p.m. CST the agents took a short break, and resumed the questioning at 11:01 p.m. CST. During the course of that questioning, which included additional admissions of guilt, the agents inquired about a ledger found in the house where the Defendant was living. *Id.* at 39. The Defendant stated the ledger was "an accounting of how many people entered the country. That accounting is there." *Id.* The agents also inquired about other items in the Defendant's possession including "The bank check book, deposit slips, [and] receipts." *Id.* at 40. The Defendant stated, "All of those are mine." *Id.* Finally, the Defendant admitted the three phones in his possession were his and gave the agents permission to search his phones, offering his passwords. *Id.* at 40-42. Agent Rahman explained the Defendant's rights and the Defendant signed a written consent form giving agents permission to search his phones. *See* Attachment D.

## II. Discussion

In his motion to suppress, the Defendant contends that the post-*Miranda* statements he made to HSI agents should be suppressed because (1) he did not validly waive his *Miranda* rights before making such statements, and (2) his confession was otherwise not made voluntarily. The Defendant's arguments are belied by the fact that the Defendant made a knowing, intelligent, and voluntary waiver of his *Miranda* rights, and because the Defendant's statements were in all other respects voluntary and not the product of coercion. The Government addresses the Defendant's arguments regarding waiver and voluntariness in turn.

### A. The Defendant Knowingly, Intelligently, and Voluntarily Waived his *Miranda* Rights

"[S]tatements made by a defendant during custodial interrogation may not be used against him at trial unless procedural safeguards are employed to protect the defendant's Fifth Amendment privilege against self-incrimination." *United States v. Andrews*, 22 F.3d 1328, 1337 (5th Cir. 1994). This requirement is most commonly satisfied by giving the defendant the customary *Miranda* warnings: that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one. *Id.* However, the Supreme Court has never required that the warnings be given in any particular form or manner. *See, e.g.*, *Missouri v. Seibert*, 542 U.S. 600, 611 (2004); *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989); *California v. Prysock*, 453 U.S. 355, 359 (1981). "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth*, 492 U.S. at 203 (quoting *Prysock*, 453 U.S. at 361). Once the defendant validly waives these rights, statements made during a custodial

interrogation may be used by the Government at trial. *Andrews*, 22 F.3d at 1337; *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005).

The Government bears the burden of showing a valid *Miranda* waiver by a preponderance of the evidence. *See United States v. Garcia Abrego,* 141 F.3d 142, 171 (5th Cir. 1998). "The inquiry whether a valid waiver has occurred 'has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Andrews*, 22 F.3d at 1337 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The Defendant claims that his *Miranda* waiver was not valid because he did not understand his rights, and because he attempted to ask a question of Agent Rahman which was not answered. These assertions are faulty and do not entitle the Defendant to relief. First, it is uncontroverted that the HSI agents provided the Defendant with his *Miranda* rights written in his native language of Bengali, and that the Defendant signed it. *See* Attachment A.[3] HSI Agent Rahman also went

---

3 The Government does note that the translation of item six on the *Miranda* waiver form is incorrect. Attachment A. Item six reads, "*If you do not want an attorney*, then one will be appointed for you before you are asked any questions." *Id.* (emphasis added). The correct warning should have informed the Defendant that if the Defendant could not afford to hire an attorney, then one would be appointed for him. *See Andrews*, 22 F.3d at 1337. However, the fact that the HSI agent orally provided the correct version of all of the *Miranda* warnings to the Defendant sufficiently cured any defect in the form. Agent Rahman and the Defendant had the following exchange:

> MR: The sixth line, if you can't pay for the lawyer, the country will provide you with one, alright?

through the form line by line with the Defendant. Attachment B at 7-8. After each line, the Defendant said "Yes" or "Okay" to indicate that he understood. *Id.* These facts conclusively demonstrate a valid waiver. *See United States v. Venegas*, 594 Fed. Appx. 822, 828 (5th Cir. 2014) (not reported in Federal Reporter) (holding that a written warning alone is sufficient to apprise a defendant of his *Miranda* rights); *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (holding that a warning is sufficient if it "touche[s] all of the bases required by *Miranda*," and that that "no talismanic incantation" is required to satisfy *Miranda*).

Second, the questions that the Defendant asked the HSI agents were in fact answered, and do not indicate that the Defendant did not understand his rights. After the Defendant waived his *Miranda* rights, Agent Rahman asked him if, "after knowing the rules and regulations of this country," he still wanted to talk with the HSI agents. Attachment B at 9. The Defendant asked if the agents were going to produce him in court. *Id.* The agents answered "Yes." *Id.* The Defendant did not ask any follow up questions or otherwise indicate that he did not understand. *Id.* Nor did the Defendant at any point state that he did not wish to speak with the agents. *Id.*

Agent Rahman then informed the Defendant that this was the Defendant's time to talk to them and that they would not be able to speak with the Defendant the following day. *Id.* The Defendant said, "It would be better if you explained it to me." *Id.* Accordingly, Agent Rahman

---

MH: Sorry?

MR: That means that if you can't afford a lawyer the country will give you one, alright?

MH: Okay.

Attachment B at 8. This explanation sufficiently apprised the Defendant of his right to an attorney. *See Duckworth v. Eagan*, 492 U.S. 195, 202-03 (1989).

explained that it was the Defendant's opportunity to speak with them, that he would be brought to court the next day. *Id.* The Defendant did not ask any further questions. The Defendant then stated that he wanted to explain that he was not involved in the activities for which he was arrested.[4] *Id.* at 9-10. At this point the conversation transitioned into a questioning of the Defendant about his activities in Monterrey. *Id.* at 10.

These facts demonstrate that, under the totality of the circumstances surrounding the interrogation, the Defendant made an uncoerced choice to waive his *Miranda* rights with the requisite level of comprehension. *Moran*, 475 U.S. at 421. The Defendant's waiver was therefore knowing and intelligent. Not only did the Defendant sign a *Miranda* waiver written in his native language, but he also said "Yes" to each line of the waiver when it was read to him. Further, the HSI agents answered the Defendant's questions about whether he would be produced in court, and the Defendant did not ask any further questions that went unanswered. There is simply no indication that the Defendant's waiver was anything but knowing and intelligent, because it was made with the "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Andrews*, 22 F.3d at 133 (quoting *Moran*, 475 U.S. at 421).[5]

---

[4] The Defendant's Motion to Suppress at page 12 quotes a portion of the interview to imply that the Defendant desired to say something which the agents did not permit him to finish. ("MH: I wanted to say that…") This implication is incorrect, as the transcript shows that the Defendant resumed his thought and stated, "I wanted to say that I am not involved in the activities for which I am accused and arrested." Attachment B at 10.

[5] The Defendant also implies, without alleging outright, that his *Miranda* waiver was not voluntary because he had not eaten in 24 hours. Def. Mot. to Suppress at 13. However, the fact that the Defendant never requested food undermines any contention that his hunger undermined his ability to make a voluntary waiver of his *Miranda* rights. *See United States v. Mitchell*, Crim. Action No. 3:13–CR–128–L–1, 2013 WL 5300687, at *5 (N.D. Texas, September 20, 2013) (not

### B. The Defendant's Confession was Voluntary under the Totality of the Circumstances

"When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." *Garcia Abrego*, 141 F.3d at 170 (citing *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992)). The Government may satisfy its burden of proving voluntariness if it demonstrates that, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Moreover, that coercive conduct must cause the confession. *Id.* at 164.

The Defendant claims that his post-*Miranda* statements were not voluntary for several reasons. First, he asserts that the HSI agents improperly promised him that he would not face any jail time if he spoke with them. Def. Mot. to Suppress at 17. To the contrary, the HSI agents never made explicit promises that the Defendant would receive leniency should he speak with them. The HSI agents told the Defendant that it was his opportunity to speak the truth and help himself, that

---

reported in F. Supp. 2d.) (rejecting the defendant's allegation that his *Miranda* waiver was rendered involuntary by the defendant's lack of sleep, lack of food, and medical condition, because, in part, the defendant never requested additional time to rest or requested food, never complained about his condition, and because the officers did not condition additional rest time or food on receiving a confession); *Muniz v. Johnson*, 132 F.3d 214, 219 n.9 (5th Cir. 1998) (defendant's failure to request food, and the fact that officers did not condition access to food and drink on the defendant confessing, undermined his arguments that his confession was rendered involuntary by lack of food).

he was facing jail time, and that it was up to him if he wanted to help himself or not. *See* Attachment B at 16. Courts have routinely held that similar statements by law enforcement encouraging suspects to confess do not constitute gross intimidation or coercion. *See Cardenas*, 410 F.3d at 295 (officers' statement to defendant that "the only way she could help herself now was to talk to the AUSA" did not render confession involuntary); *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) (concluding that a statement that the accused's cooperation would be made known to the court was an insufficient inducement to render subsequent confession involuntary); *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1348 (5th Cir. 1994) (advising accused that there are advantages to cooperating does not render confession involuntary); *United States v. Tatum*, 121 F. Supp. 2d 577, 587 (E.D. Tex. 2000) ("[E]ncouraging the defendant to be honest is not so coercive as to render the defendant's incriminating statements involuntary."). The statements made by the HSI agents were "at most an implication of leniency, and indirect promises do not have the potency of direct promises." *Hawkins v. Lynaugh*, 844 F.2d 1132 (5th Cir. 1988) (citation and quotation marks omitted); *Hyde v. Branker*, 286 Fed. Appx. 822, 827 (4th Cir. 2008) (not reported in Federal Reporter) (statements by law enforcement that they would "take it lighter" on defendant if he spoke to them did not render statement involuntary).[6] And as the Fifth Circuit has noted, "there is nothing inherently wrong with efforts to create a favorable climate for confession." *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988).

---

[6] Even assuming for the sake of argument that the HSI agents did make a promise to the Defendant, the existence of a promise constitutes but one factor in that determination and does not render a confession involuntary *per se*. *Hawkins*, 844 F.2d at 1140.

The Defendant also claims that his confession was involuntary because one of the HSI agents spoke with him about their shared religious background. Def. Mot. to Suppress at 17. However, invocations of religion are generally insufficient to render a statement involuntary. *Muniz v. Johnson*, 132 F.3d 214, 217 (5th Cir. 1998) (detective's appeal to the defendant's religion did not overpower the defendant's will or produce a confession that was not of the defendant's own free choice); *United States v. Scaggs*, 377 Fed. Appx. 653, 656 (9th Cir. 2010) (not reported in Federal Reporter) ("David also argues that his *Miranda* waiver was involuntary because the investigator asked if he was a religious man, and when he replied in the affirmative, the investigator said, 'Well, if you're a religious guy, now is the time to tell the truth.' We disagree. An appeal to a suspect's religious beliefs does not render a confession involuntary unless his will was overborne."); *United States v. Miller*, 984 F.2d 1028, 1031-32 (9th Cir. 1993) (finding no causal relationship between FBI agent's invocation of religion and defendant's confession). Because there is no evidence in the record that the HSI agent's invocation of religion was coercive or overbore the Defendant's will, the Defendant's arguments should be rejected.

Finally, the Defendant claims that his confession was involuntary because the HSI agents compared the treatment the Defendant received in the United States with the coercive tactics that could be employed against him if he were in Bangladesh or Mexico. Def. Mot. to Suppress at 17. However, these statements only served to reinforced to the Defendant that it was his choice to speak with the agents, and that no such coercive tactics would be used against him in the United States. If anything, these comments by the agents underscored for the Defendant that he was able

to make the free and rational choice whether to participate in the interview. *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996).

In conclusion, courts have affirmed the voluntariness of confessions in circumstances which are arguably more concerning than the facts presented here. *See Andrews*, 22 F.3d at 1340 (confession still voluntary even though it was made only two hours after the defendant was arrested for a DUI and failed a roadside sobriety test); *United States v. Reynolds*, 367 F.3d 294, 297-99 (5th Cir. 2004) (defendant made a voluntary confession despite having taken methamphetamine an hour before he was arrested and not having slept for three days at the time of his arrest, because he was cooperative, listened to questions, responded appropriately, and did not appear to be under the influence of drugs or alcohol); *United States v. Solis*, 299 F.3d 420, 439-440 (5th Cir. 2002) (fact that defendant took speed one hour before arrest did not render his confession involuntary, as the defendant was alert, lucid, and articulate). Because there is no evidence in the record of any coercion by law enforcement, and because the Defendant's confession was the product of his "free and rational choice," *Broussard*, 80 F.3d at 1033, this Court should deny the Defendant's Motion to Suppress.[7]

**III. Conclusion**

The Government respectfully requests that the Court deny Defendant's Motion to Suppress Statements and Evidence, ECF No. 40.

---

[7] For all of the reasons set out above, the Defendant also validly executed the consent form for HSI agents to search his cell phone. *See* Attachment D (Consent to Search Form); Attachment B at 41, 43.

Respectfully submitted this 8th day of May, 2019.

Respectfully submitted,

BRIAN BENCZKOWSKI
Assistant Attorney General
Department of Justice

By: /s/ Erin Cox
Erin Cox – IL Bar No. 6308801
James Hepburn – PA Bar No. 200051
Trial Attorneys
Human Rights and Special Prosecutions
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, 3rd Floor
Washington, D.C. 20530
202-598-2771
erin.cox@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on defense counsel via CM/ECF on May 8, 2019.

BRIAN BENCZKOWSKI
Assistant Attorney General
Department of Justice

By: ___/s/ Erin Cox__________
Erin Cox
James Hepburn
Trial Attorneys
Human Rights and Special Prosecutions Section